UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Criminal Case No. 20-80 (ADC) |
| | 20-mj-3033-KAR |
| JEREMY JOEL LOPEZ, | |
| Defendant. | |

MEMORANDUM AND ORDER DENYING THE GOVERNMENT'S
MOTION FOR PRETRIAL DETENTION

Defendant Jeremy Joel Lopez (Defendant) is charged by an indictment returned by the

Grand Jury sitting in Puerto Rico with coercion and enticement in violation of 18 U.S.C. §

2422(b)(2), receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and transfer of

obscene material in violation of 18 U.C.S. § 1470.  The government has moved for pre-trial

detention on the grounds that there are no conditions of pretrial release that would reasonably

assure Defendant's appearance as required or the safety of the community.  The government

invokes the presumption that applies when a defendant is charged with a felony that involves a

minor victim.  18 U.S.C. § 3142(f)(1)(E).  Defendant was arrested in Holyoke, Massachusetts

and invoked his right to a detention hearing in this district.  The court held an evidentiary hearing

on the government's motion on February 25, 2020.  FBI agent Robert W. Curtin testified.  In

addition to Agent Curtin's testimony, the evidence consists of Agent Curtin's report on the

extraction of information from the cell phone of the alleged victim, his report of his January 27,

2020 interview of Defendant, and the pretrial services report.[1]  At the conclusion of the hearing, the court took the government's motion under advisement.  For the reasons set forth below, the court denies the government's motion for pretrial detention and orders Defendant released pending trial on the conditions in Exhibit 1, attached hereto.

The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include the nature and circumstances of the offense charged; the weight of the evidence against the accused; the history and characteristics of the accused, including family ties, history relating to drug or alcohol abuse, criminal history, record concerning appearances at court proceedings, financial resources and employment; and the nature and seriousness of the danger to any person or the community that would be posed by a release.  *See* 18 U.S.C. § 3142(g).  When the government invokes the presumption of detention, "[t]he burden of persuasion remains with the government to establish that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *United States v. Oliveira*, Criminal Action No. 16-10272-NMG, 2017 WL 690185, at *2 (D. Mass. Feb. 21, 2017) (internal quotations omitted).  The presumption does not disappear and, even if rebutted by evidence from the defendant, still carries weight in the court's determination.  *U.S. v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) (per curiam) ("the rebutted presumption retains evidentiary weight").

The evidence at the hearing, including the contents of the pretrial services report, supports the following findings concerning the history and characteristics of the accused and the

---

[1] The Probation Department recommended pretrial detention on the understanding that Defendant had failed to appear on state court charges that were subsequently indicted in federal court.  The parties agree that this is not an accurate representation of affairs and that Defendant did not fail to appear on state court charges.

nature and circumstances of the offenses charged.  The defendant is now twenty-one years old.

He was born and lived in or around Springfield for his entire life except for a period from some

time in 2017 through October 2019, when he lived in Puerto Rico with his father and the minor

victim and her mother, sister, and brother.  Defendant has no juvenile or adult criminal history.

He has no documented history of drug or alcohol abuse except that, recently, he used marijuana

regularly, an activity that is not illegal under Massachusetts law, but remains illegal under federal

law.  There is no evidence to suggest a current or past mental health condition.

Defendant is single and has no children.  He is in regular contact with his mother, who

lives in Holyoke.  He used her address to obtain a Massachusetts driver's license in October

2019.  His maternal grandparents, with whom he was living at the time of his arrest, also live in

Holyoke.  Most members of Defendant's extended family live in western Massachusetts.  He has

family in Puerto Rico, however, and has traveled back and forth to Puerto Rico since his

childhood to visit family members.  He has no passport and has not traveled outside of the

United States.  He dropped out of high school in the twelfth grade.  He was employed through a

temporary agency at the time of his arrest.

The nature and circumstances of the crime are as follows.  In Puerto Rico, beginning

sometime in 2017, Defendant began sharing a bedroom with the minor victim, who was around

ten years old.  No one else slept in the room.  Defendant told FBI agents he does not know why

the minor victim's mother and his father placed the two of them together.  At some point during

the two years that Defendant and the minor victim shared the room, they began exchanging

explicit images of themselves via online applications and text messages and engaging in intimate

relations.  In or around September 2019, the minor victim's father gained temporary custody of

the minor victim and her siblings, and they went to live with their father in Orlando, Florida.

The minor victim was twelve at the time.  The father was concerned about the minor victim, whose brother told their father that the minor victim was involved with Defendant.  The minor victim's father obtained access to her cell phone and confirmed an intimate relationship.

The FBI performed a cell phone extraction on the minor's cell phone.  In summary, the extraction showed that the cell phone "contained four videos depicting sexual acts believed to be performed by the [minor] victim (3) or [Defendant] (1); multiple self-taken photographs of a penis believed to be of [Defendant]; multiple photographs or photograph collages of a vagina believed to be of the victim (minor); one photograph of [Defendant] performing oral sex on a female; one mirror selfie photograph of a couple engaged in … sexual intercourse, or simulated sexual intercourse" (Exh. 1 at 2).  Based on the report, it is believed that Defendant recorded some of the intimate activities between himself and the minor.  Text messages tend to show that sometimes Defendant solicited images from the minor and sometimes she volunteered to provide images (Exh. 1).

FBI agent Curtin testified that the FBI believes that Defendant returned from Puerto Rico to Massachusetts in or around October 2019.  He obtained a Massachusetts driver's license using his mother's address on October 15, 2019 (Exh. 2 at 1).  Agent Curtin testified that the parents of the minor victim filed a report with the Puerto Rico police in or around late September 2019.  The Puerto Rico police referred the matter to the FBI.  Communications between Defendant and the minor victim ceased on or around September 20, 2019, around the date of the report to the Puerto Rico police.  It is a fair inference from the evidence that Defendant knew when he left Puerto Rico that the relationship had been discovered and that he could be in serious trouble.  While there are now charges against Defendant pending in the Puerto Rico court system, those

charges were not filed until around the same date the federal indictment was returned, which was on February 12, 2020.

When federal agents sought to interview Defendant in Massachusetts in late January 2020, they relied on the address on Defendant's driver's license and got in touch with Defendant's mother. She told the FBI agents that Defendant was living with his grandparents and cooperated by providing the grandparents' address. FBI agents were interviewing Defendant within a few hours of speaking with Defendant's mother. Defendant knew ahead of time that the FBI agents were coming to his grandparents' home. Defendant did not leave and agreed to be interviewed when the FBI agents arrived.

1. Risk of Flight

On the question of risk of flight, the government relies on the statutory presumption, the indisputable strength of the government's case, and the severe penal consequences that Defendant faces in the federal system which, on the present charges, include a mandatory minimum of ten years on one offense and a mandatory minimum of five years on another offense, along with the fact that Defendant also faces charges in the Puerto Rico courts. The government also points out that Defendant left Puerto Rico when his alleged conduct was discovered by the minor victim's family. While these contentions carry weight, the court finds that, in the circumstances of this case, they are not sufficient to prove by a preponderance of the evidence that there are no conditions of supervised release that will reasonably assure Defendant's future appearances in court.

The court finds that Defendant has rebutted the presumption that he would pose a risk of flight or nonappearance if he were released pending trial. To meet his burden, Defendant has proposed that he would reside with his grandparents, who would serve as third party custodians.

Their home is suitable for the electronic location monitoring that is required by the Adam Walsh

Act if Defendant is released.  *See* 18 U.S.C. § 3142(c).  His family has shown their continued

support for Defendant by their attendance in court.  According to Defendant's attorney, his

family will accept responsibility for assuring his appearances as necessary in Puerto Rico.  His

mother and grandparents have cooperated with the FBI and the federal Probation Department.

Defendant was aware that his alleged activity with the minor victim had been discovered by

family members and that he might be in serious trouble.  Notwithstanding this knowledge, he did

not leave this district, nor did he seek to avoid an interview with the FBI.  When the FBI sought

to interview him, he was living with his grandparents at an address that the family readily

disclosed.  Defendant has no history of defaults or failures to appear.  He is young (21 at this

time) and has no apparent financial resources or connections that would assist him with flight

from this district.  He has never had a passport or traveled outside of the United States.  He has

lived in Springfield all of his life except for the recent period when he lived in Puerto Rico with

his father.  He has not had any contact with his father for the last six months.  According to the

pretrial services report, his primary connections in Puerto Rico appear to be on his father's side,

and it is a reasonable inference that those connections are not available to him at this time and in

these circumstances.  He will be subject to electronic location monitoring and a curfew and

required to reside in an approved residence in the custody of his grandparents.  In the court's

view, the conditions in Exhibit 1 are sufficient to reasonably assure his future court appearances.

*Contrast U.S. v. Hernandez*, 154 F. Supp. 2d 240, 244 (D.P.R. 2001) (a defendant charged with

possession of child pornography who had attempted to entice minors into his house on two

occasions and successfully did so on one occasion posed a risk of flight where he had no ties to

the community, had not been employed in the district, and was a Venezuelan citizen whose children were in Venezuela, a country from which extradition would be illegal).

    2.  <u>Danger to Another or the Community</u>

Given the nature of the charged offenses, which, as alleged, represent a profound betrayal of the trust and bodily integrity of a ten-year old child, the question of whether there are conditions of release that will reasonably assure the safety of another or the community if Defendant is released pending trial is significant and difficult.  In this regard, the court finds instructive the decisions in *Hernandez* and *U.S. v. Vasquez*, 241 F. Supp. 2d 34 (D. Me. 2003). In *Vazquez*, the defendant solicited sex from a thirteen-year old through a series of Internet chats and telephone calls and traveled from Chicago to Maine for the purpose of having sex with her. The District Judge, reviewing the decision made by the Magistrate Judge "was satisfied"

> that the offense conduct . . . [was] so bizarre as to justify the inference that the Defendant [was] fixated on having sex with juvenile girls.  The level of determination demonstrated by Defendant's pursuit of his purpose with the victim here, over a period of months and from a considerable geographic distance, and the other circumstances of the pursuit make it crystal clear that his fixation is likely generic in orientation as to victims and is not generated by any specific attraction to this specific victim.  His interest is likely indiscriminate except as to age.

*Vasquez*, 241 F. Supp. 2d at 36.  The *Vasquez* court held that, in the absence of a suitable third-party custodian, the defendant could not be released pending trial.  In *Hernandez*, the court found that the defendant represented a danger to minors in his community where he had attempted to entice minors into his residence on at least two occasions "to show the minors … sexually explicit pictures" and that he was strongly addicted to pornography, including child pornography. *Hernandez*, 154 F. Supp. 2d at 243, 244.

In the *Hernandez* and *Vasquez* cases, the decision to detain the defendants pending trial depended to a significant extent on findings that there was persuasive evidence of the

defendants' propensity for sexual activities involving minor children.  Here, the government has

not produced such evidence.  On the record before the court, it is a reasonable inference, and one

that the court draws on this record, that the offenses as to which the Grand Jury has found

probable cause, while heinous, were offenses of propinquity rather than propensity.  Defendant

was placed in a bedroom with a ten-year old girl – by his father and her mother – for an extended

period of time.  There is no evidence of sexual (or other) misconduct by Defendant involving

anyone other than the minor victim with whom he shared a bedroom in Puerto Rico.  To the

extent the contents of the victim's cell phone shed light on the question of propensity, there were

pornographic and erotic images downloaded from "an outside website and/or social media site"

but these images did not depict child pornography (Exhibit 1 at 2).  On this record, the

government has not shown by clear and convincing evidence that Defendant has a "generic

[sexual] interest" in minor children.  In contrast to *Vasquez*, there are suitable third-party

custodians with whom Defendant can be required to reside pending trial in his case.  Further,

while the government was critical of Defendant's motives, which were expressed as self-

interested, the evidence at the detention hearing was to the effect that, at the end of Defendant's

communications with the minor victim, he was trying to break off the relationship because her

mother knew and he could get into serious trouble.  There is no evidence Defendant has tried to

reach out to the minor victim or her family since the end of September 2019.  As long as

Defendant resides in Massachusetts pending trial, conditions can be imposed that will reasonably

assure that he does not pose a further risk of danger to the minor victim if he is released pending

trial.

   For the foregoing reasons, the court finds that the government has not proved by clear

and convincing evidence that there are no conditions of pretrial release that will reasonably

assure the safety of another or the community if Defendant is released pending trial.  A form of

conditions of release for Defendant, which comply with the Adam Walsh Act and are stringent,

is attached hereto as Exhibit 1.  The United States Marshal is ordered to keep Defendant in

custody until conditions of supervised release, including the installation of electronic location

monitoring equipment, are satisfied.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

Dated: March 3, 2020